UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH
CENTRAL DIVISION

| | |
|---|---|
| ZACHARY SOQUI,<br><br>        Plaintiff,<br><br>v.<br><br>ENGLAND LOGISTICS, INC.,<br><br>        Defendant. | **MEMORANDUM DECISION AND ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION TO COMPEL (DOC. NO. 34) AND DENYING DEFENDANT'S MOTION FOR SANCTIONS (DOC. NO. 39)**<br><br>Case No. 2:24-cv-00261<br><br>District Judge Howard C. Nielson, Jr.<br><br>Magistrate Judge Daphne A. Oberg |

On a Friday afternoon, minutes after emailing discovery requests to counsel for England Logistics, Inc., Katie Panzer (Zachary Soqui's counsel) posted a video on her public Instagram account stating as follows:

> So if you know me in real life, you probably know that I am a petty-ass bitch.  And one of my favorite things to do is drop a bunch of bullshit on opposing counsel's desk at like 4:45 on a Friday afternoon, and then be like, thanks so much.  Have a great weekend![1]

After seeing the video, England's counsel asked Mr. Soqui's counsel to withdraw the discovery requests, citing the video as evidence the requests were propounded for an improper purpose in violation of Rule 26(g) of the Federal Rules of Civil Procedure.[2] When Mr. Soqui's counsel declined, England served responses and objections—

---

[1] (*See* Pl.'s Mot. to Compel 4, Doc. No. 34; Ex. 7 to Pl.'s Mot. to Compel, Instagram Video, Doc. No. 49 (filed nonelectronically).)

[2] (*See* Pl.'s Mot. to Compel 5, Doc. No. 34.)

objecting to all the requests based on improper purpose, asserting additional objections to all but one request, and substantively responding to some of the requests.[3]  The parties met and conferred regarding the sufficiency of England's responses and objections but could not resolve the dispute.

Mr. Soqui then filed a motion to (1) compel supplemental responses to the discovery requests and (2) impose sanctions on England under Rule 26(g).[4]  Mr. Soqui claims England's improper-purpose objection is "meritless" and it "improperly refused to respond" to legitimate discovery requests.[5]  Mr. Soqui also asserts England should be sanctioned because it used the improper-purpose objection to "attempt to embarrass, bully, and harass Ms. Panzer into withdrawing proper discovery requests."[6]  England opposed the motion[7] and filed its own motion for sanctions under Rule 26(g),[8] arguing Ms. Panzer's behavior demonstrated the requests were propounded for an improper purpose.

The court held a hearing on these motions on October 28, 2025.[9]  As explained at the hearing and below, Mr. Soqui's motion is granted in part and denied in part, and

---

[3] (*See id.*; Ex. 9 to Pl.'s Mot. to Compel, Def.'s Resps. to Pl.'s Second Set of Disc. Reqs. to Def. (Def.'s Disc. Resps.), Doc. No. 34-9.)

[4] (Pl.'s Mot. to Compel, Doc. No. 34.)

[5] (*Id.* at 8.)

[6] (*Id.* at 15.)

[7] (Def.'s Opp'n to Pl.'s Mot. to Compel, Doc. No. 46.)

[8] (Short Form Mot. for Sanctions Pursuant to Rule 26(g) (Def.'s Mot. for Sanctions), Doc. No. 39.)

[9] (*See* Min. Entry, Doc. No. 53.)

England's motion is denied.  England's improper-purpose objection is overruled because the discovery requests do not reveal an improper purpose.  Because neither the content nor timing of the requests is improper—even when considered together with Ms. Panzer's Instagram statements—the requests do not demonstrate an improper purpose.  But contrary to Mr. Soqui's claim, England was substantially justified in asserting the improper-purpose objection based on Ms. Panzer's public statements.  Accordingly, both parties' requests for sanctions under Rule 26(g) are denied.[10]  And, as outlined below, Mr. Soqui's request to compel supplemental responses is granted in part and denied in part.

## BACKGROUND

Mr. Soqui brought this action against his former employer under the Americans with Disabilities Act.[11]  Mr. Soqui claims England discriminated against him by terminating him after he requested the reasonable accommodation of working from home.[12]  The fact discovery period closes on November 10, 2025.[13]

On Friday, August 29, 2025, at 4:35 p.m., Ms. Panzer emailed Mr. Soqui's second set of discovery requests to England's counsel.[14]  Ms. Panzer closed her email

---

[10] At the hearing, the court notified Ms. Panzer it is considering imposing sanctions on her sua sponte under the District of Utah's local rules and the Utah Standards of Professionalism and Civility.  As stated at the hearing, Ms. Panzer is permitted to file a response by November 4, 2025, showing cause why she should not be sanctioned for the reasons stated on the record.

[11] (Compl., Doc. No. 1); 42 U.S.C. § 12101 et seq.

[12] (See Compl. ¶¶ 46–55, Doc. No. 1.)

[13] (See Third Am. Sched. Order, Doc. No. 33.)

[14] (Ex. 4 to Pl.'s Mot. to Compel, Doc. No. 34-4.)

with: "Have a great weekend!"[15]  Less than fifteen minutes later, she posted the

Instagram video described above.[16]

    After seeing the video, England's counsel emailed it to Ms. Panzer's supervisor

(who is co-counsel in this matter) and requested a phone call.[17]  Ms. Panzer's

supervisor responded that England's counsel would need to talk to Ms. Panzer

directly.[18]  During the subsequent phone call between England's counsel and Ms.

Panzer (which Ms. Panzer recorded), England's counsel asked Ms. Panzer to withdraw

the second set of discovery requests.[19]  England's counsel explained her view that Ms.

Panzer's Instagram statements were an admission that the requests were served for an

improper purpose.[20]  Ms. Panzer responded that the video was a joke, and contended

the requests were proper.[21]  England's counsel indicated she was still deciding what to

do, but if Ms. Panzer did not withdraw the requests, England might bring the issue

before the court.[22]  She stated she didn't think the presiding judge "would agree that it's

---

[15] (*Id.*)

[16] (*See* Def.'s Opp'n to Pl.'s Mot. to Compel 3, Doc. No. 46; Ex. 7 to Pl.'s Mot. to Compel, Instagram Video, Doc. No. 49.)

[17] (*See* Ex. 6 to Pl.'s Mot. to Compel, Conferral Emails, Doc. No. 34-6 at 4–5.)

[18] (*Id.*)

[19] (*See id.* Def.'s Opp'n to Pl.'s Mot. to Compel 4, Doc. No. 46; Ex. A to Def.'s Opp'n to Pl.'s Mot. to Compel, Recorded Phone Call, Doc. No. 50 (filed nonelectronically).)

[20] (Ex. A to Def.'s Opp'n to Pl.'s Mot. to Compel, Recorded Phone Call, Doc. No. 50.)

[21] (*Id.*)

[22] (*Id.*)

funny or that that's how officers of the court here in the State of Utah should be holding themselves out."[23]

After the call, Ms. Panzer declined to withdraw the requests.[24]  England then served its responses and objections, which included an objection to every request as improper based on the Instagram video.[25]  After conferring regarding the sufficiency of England's responses, the parties were unable to resolve the dispute, and these motions followed.

## ANALYSIS

A. England's Improper-Purpose Objection and Request for Sanctions

Under Rule 26(g), "every discovery request, response, or objection must be signed by at least one attorney of record in the attorney's own name."[26]  The rule provides that "[b]y signing, an attorney or party certifies that to the best of the person's knowledge, information, and belief formed after a reasonable inquiry," the discovery request, response, or objection is:

> (i) consistent with these rules and warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law, or for establishing new law;
>
> (ii) not interposed for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; and

---

[23] (*Id.*)

[24] (*See* Pl.'s Mot. to Compel 5, Doc. No. 34.)

[25] (Ex. 9 to Pl.'s Mot. to Compel, Def.'s Disc. Resps., Doc. No. 34-9.)

[26] Fed. R. Civ. P. 26(g)(1).

(iii) neither unreasonable nor unduly burdensome or expensive,
considering the needs of the case, prior discovery in the case, the amount
in controversy, and the importance of the issues at stake in the action.[27]

The rule requires a court to impose sanctions for violations, stating: "If a certification violates this rule without substantial justification, the court, on motion or on its own, must impose an appropriate sanction on the signer, the party on whose behalf the signer was acting, or both."[28]  "The sanction may include an order to pay the reasonable expenses, including attorney's fees, caused by the violation."[29]

When considering sanctions under Rule 26(g), "the court must judge the attorney's conduct under an objective standard of reasonableness.  Subjective bad faith is not required."[30]  Reasonableness is ultimately "evaluated in light of the totality of the circumstances" based on what the attorney knew at the time of signing.[31]  A violation of Rule 26(g) is sanctionable only if the certification was not substantially justified.[32]  "Substantially justified" means "justified in substance or in the main—that is, justified to a degree that could satisfy a reasonable person."[33]

---

[27] Fed. R. Civ. P. 26(g)(1)(B).

[28] Fed. R. Civ. P. 26(g)(3).

[29] *Id.*

[30] *In re Byrd, Inc.*, 927 F.2d 1135, 1137 (10th Cir. 1991) (citation omitted).

[31] *A PDX Pro Co. v. Dish Network Serv., LLC*, 311 F.R.D. 642, 653 (D. Colo. 2015) (citation omitted); *see also* Fed. R. Civ. P. 26, advisory committee's note to 1983 amendment ("The certification speaks as of the time it is made.").

[32] *See* Fed. R. Civ. P. 26(g)(3).

[33] *Schmelzer v. IHC Health Servs.*, No. 2:19-cv-00965, 2022 U.S. Dist. LEXIS 139877, at *12 (D. Utah Aug. 4, 2022) (unpublished) (internal quotation marks omitted).

Mr. Soqui argues his discovery requests "cannot be served for an improper purpose" because they seek relevant and discoverable information.[34]  He contends his counsel's characterization of the requests on social media is "wholly irrelevant" where the requests themselves are "clearly not improper."[35]  England, on the other hand, argues Ms. Panzer's statements about issuing "a bunch of bullshit" to opposing counsel was an admission that she issued the discovery requests for an improper purpose.[36] England asserts Ms. Panzer's comments were objectively unreasonable and demonstrate an intent "to harass and/or unnecessarily increase the cost of the litigation."[37]  England contends it should not be required to respond to the requests,[38] and it seeks sanctions, including attorney's fees, under Rule 26(g).[39]

As an initial matter, Mr. Soqui is incorrect that his counsel's statements on Instagram are "wholly irrelevant."[40]  While subjective bad faith is not required, "outward behavior that manifests improper purpose may be considered in determining objective improper purpose deserving sanction."[41]  Accordingly, if an attorney makes statements (in whatever forum) admitting or suggesting discovery was propounded for an improper

---

[34] (Pl.'s Mot. to Compel 10, Doc. No. 34.)

[35] (*Id.*)

[36] (Def.'s Mot. for Sanctions 1, Doc. No. 39.)

[37] (Def.'s Opp'n to Pl.'s Mot. to Compel 7–8, Doc. No. 46.)

[38] (*See id.*)

[39] (Def.'s Mot. for Sanctions 3, Doc. No. 39.)

[40] (Pl.'s Mot. to Compel 10, Doc. No. 34.)

[41] *St. Paul Reinsurance Co. v. Com. Fin. Corp.*, 198 F.R.D. 508, 516 (N.D. Iowa 2000) (citing *Townsend v. Holman Consulting Corp.*, 929 F.2d 1358, 1366 (9th Cir.1990)).

purpose such as harassment, delay, or increasing costs, those statements are relevant to determining whether the discovery violates Rule 26(g).

There is no question Ms. Panzer's Instagram post was unprofessional and imprudent. But Ms. Panzer's reference to the requests as "a bunch of bullshit" does not, on its own, establish the requests themselves are objectively improper or propounded for an improper purpose. Although it calls into question the subjective purpose of the discovery requests, it does not automatically establish an improper purpose under an objective standard of reasonableness. While the video must be considered in the totality of the circumstances, if the requests are relevant and proportional, it would be illogical to find them objectively improper on the grounds that counsel made ill-advised statements on social media calling them "bullshit."

Further, Ms. Panzer's stated enjoyment of serving discovery requests on a Friday afternoon does not demonstrate an objectively improper purpose related to their timing. Where a party has thirty days to respond to such requests,[42] the time of day and day of the week on which they are served has no practical effect on the burden or expense of responding. The fact that Ms. Panzer served these requests on a Friday afternoon did not objectively constitute harassment, cause unnecessary delay, or increase the cost of litigation—even if Ms. Panzer intended them to. For these reasons, Mr. Panzer's statements on Instagram, standing alone, do not establish the substance of the requests or the timing of their service was improper. The court must also consider the

---

[42] *See* Fed. R. Civ. P. 33(b)(2) (setting thirty-day response deadline for interrogatories); Fed. R. Civ. P. 34(b)(2)(A) (setting thirty-day response deadline for requests for production of documents); Fed. R. Civ. P. 36(a)(3) (setting thirty-day response deadline for requests for admission).

requests themselves to determine whether they were propounded for an improper purpose.

Even when the requests are considered together with Ms. Panzer's statements, England has not shown the requests are objectively improper. The fact that England responded to some of the requests and asserted only boilerplate objections to others undermines the notion that the requests overall are harassing, cause unnecessary delay, or needlessly increase the cost of litigation. For example, England responded to Interrogatory 15 without asserting other objections (aside from improper purpose).[43] England also made only boilerplate objections to Interrogatories 10 and 11 and Request for Production (RFP) 21,[44] and does not specifically address these requests in opposing the motion to compel. And England answered Request for Admission (RFA) 16 subject to objections,[45] and agreed during conferrals to provide documents responsive to RFP 23.[46] Although some of England's objections to particular requests are sustained (as explained below), the requests as a whole address relevant issues. They are not so broadly objectionable as to suggest an objectively improper purpose. But for the Instagram post, there would be no basis to object to the content of the requests under Rule 26(g).

---

[43] (*See* Ex. 9 to Pl.'s Mot. to Compel, Def.'s Disc. Resps. 8–9, Doc. No. 34-9.)

[44] (*See id.* at 4–5, 11–12 (asserting the requests were irrelevant, overbroad, and not proportional, without further explanation); *see also* Fed. R. Civ. P. 34(b)(2)(B) (requiring a party objecting to requests for production to "state with specificity the grounds for objecting to the request, including the reasons"); Fed. R. Civ. P. 33(b)(4) (providing the "grounds for objecting to an interrogatory must be stated with specificity").

[45] (*See* Ex. 9 to Pl.'s Mot. to Compel, Def.'s Disc. Resps. 1–4, Doc. No. 34-9.)

[46] (*See* Ex. 11 to Pl.'s Mot. to Compel, Conferral Emails, Doc. No. 34-11 at 2–4.)

Because the requests themselves are not so unreasonable as to suggest an improper purpose—and the Instagram post does not make otherwise legitimate discovery requests improper—England's Rule 26(g) objection is overruled. Likewise, because the requests do not violate Rule 26(g), England's request for sanctions under that rule is denied.

B. <u>Mr. Soqui's Request for Sanctions and Attorney Fees</u>

Mr. Soqui contends England's improper-purpose objection was, itself, improper under Rule 26(g).[47] He explains Ms. Panzer's statements on Instagram were a joke that England's counsel misinterpreted, and claims "[t]here is no reasonable interpretation of Ms. Panzer's statement that transforms it into" an admission of improper purpose.[48] In essence, he transposes the argument, contending England asserted a "meritless" objection for the improper purpose of harassing his counsel, delaying litigation, and unnecessarily driving up litigation costs.[49] He also claims England's counsel "harass[ed]" and "bull[ied]" Ms. Panzer by contacting her supervising attorney about the video and "threaten[ing]" to bring the issue before the court.[50] Mr. Soqui also requests an award of attorney fees under Rule 37, arguing England's objections are not substantially justified.[51]

---

[47] (Pl.'s Mot. to Compel 13–15, Doc. No. 34.)

[48] (*Id.* at 14.)

[49] (*Id.*)

[50] (*Id.* at 15.)

[51] (*Id.* at 15–16.)

In opposition, England argues the allegations that its counsel weaponized the improper-purpose objection to embarrass, bully, and harass Ms. Panzer have no basis in reality and are unsupported by the attorneys' correspondence or the recorded conferral call.[52]  To the contrary, England asserts the emails and phone call demonstrate its counsel's efforts to address a potentially embarrassing circumstance in a delicate and professional manner.[53]  It also maintains its objections are substantially justified.[54]

England is correct on all counts.  Mr. Soqui's requests for sanctions and attorney's fees are denied.  Although England's Rule 26(g) objection is overruled, England was substantially justified in asserting the objection.  It was objectively reasonable for England to take Ms. Panzer's words at face value when she described her own discovery requests as "a bunch of bullshit."  England's argument that this violated Rule 26(g) was legitimate.

Further, England did not simply refuse to respond to otherwise valid discovery requests on this basis.  After Mr. Soqui's counsel declined to withdraw the requests, England served responses and substantive objections, without simply resting on an improper-purpose objection.  England's other objections address the substance of the requests and are legitimate.  Its objections and overall approach to responding to these requests were substantially justified.

---

[52] (Def.'s Opp'n to Pl.'s Mot. to Compel 9–10, Doc. No. 46.)

[53] (*Id.* at 10.)

[54] (*See id.* at 8–9.)

Finally, there is no evidence whatsoever that England's counsel used the improper-purpose objection to harass or bully Ms. Panzer. The record contradicts this claim. The emails and phone call between counsel reflect England's legitimate, good faith attempts to resolve this dispute without court intervention. England appropriately pursued the improper-purpose objection, and counsel's statement that England might raise the issue in court if the requests were not withdrawn was justified.

In sum, because England's discovery responses and objections were reasonable and not made for any improper purpose, England did not violate Rule 26(g), and sanctions under that rule are unavailable. For the same reasons, where England's responses and objections were substantially justified, attorney's fees are unwarranted under Rule 37.[55]

C. England's Other Objections and Responses

England's other objections and the sufficiency of its responses to each discovery request are addressed next. The court applies the standard from Rule 26(b)(1), which permits "discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case."[56] Proportionality considerations include "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties'

---

[55] *See* Fed. R. Civ. P. 37(a)(5)(A)(ii) (providing a court "must not" award expenses to the prevailing party on a motion to compel if "the opposing party's nondisclosure, response, or objection was substantially justified").

[56] Fed. R. Civ. P. 26(b)(1).

resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."[57]

**RFA 16.**  England denied RFA 16, and Mr. Soqui confirmed at the hearing that he does not seek any further response.  Accordingly, the motion is moot as to RFA 16.

**Interrogatory 10 and RFP 19.**  Interrogatory 10 asks England to "[i]dentify all members of the Cold Chain Division for the time that Mr. Soqui was employed with England."[58]  RFP 19 states: "For all Cold Chain Division employees identified in response to Interrogatory 10, produce all communications (emails, Teams messages, etc.) in which those employees used Profane Language for the period between Mr. Soqui's hire date and termination date."[59]  England objected to both requests as irrelevant, overbroad, unduly burdensome, and disproportionate, and it did not provide the requested information or documents.[60]  In response to RFP 19, England explained seventy-five employees worked in the Cold Chain division during Mr. Soqui's six-year employment, and it would take significant time and resources to search each of their communications.[61]  England also asserted the requested communications were irrelevant because it did not terminate Mr. Soqui "for using profanity per se."[62]  During

---

[57] (*Id.*)

[58] (Ex. 9 to Pl.'s Mot. to Compel, Def.'s Disc. Resps. 4, Doc. No. 34-9.)

[59] (*Id.* at 9.)

[60] (*Id.* at 4, 10.)

[61] (*Id.* at 10.)

[62] (*Id.*)

conferrals, Mr. Soqui offered to limit the timeframe of RFP 19 to 2019 through 2021—but England indicated this would still include forty-three employees.[63]

The motion is granted in part and denied in part as to Interrogatory 10 and RFP 19. England previously claimed (in response to Mr. Soqui's charge of discrimination) that it terminated Mr. Soqui because he used profanity (among other reasons).[64] This makes information about similarly situated employees' use of profanity, and England's response to it, relevant. At the hearing, England argued only employees with the same job should be considered similarly situated. But Mr. Soqui argued employees with other jobs in the Cold Chain division would have been subject to the same policy regarding use of profanity.

Mr. Soqui is correct that other employees' use of profanity is relevant even if they held other jobs, so long as they were subject to the same profanity policies.[65] Further, these requests are proportional when limited to 2019 through 2021. The number of employees at issue (approximately forty-three) is not excessively high. Any burden of searching their communications does not outweigh the likely benefit, given the relevance of this information.

---

[63] (*See* Ex. 11 to Pl.'s Mot. to Compel, Conferral Emails, Doc. No. 34-11 at 5–6.) At the hearing, England stated this timeframe would include about forty-five employees.

[64] (*See* Ex. 2 to Pl.'s Mot. to Compel, Resp. to Charge of Discrimination 3, Doc. No. 34-2 ("Mr. Soqui's behavior in show[ing] disrespect toward co-workers, using profanity and undermining the company and departmental management had become intolerable and unacceptable. . . . Mr. Soqui was terminated for such behavior, including, but not limited to, the profane and disrespectful emails sent on June 28, 2022.").)

[65] *See Kendrick v. Penske Transp. Servs.*, 220 F.3d 1220, 1232 (10th Cir. 2000) ("An employee is similarly situated to the plaintiff if the employee deals with the same supervisor and is subject to the same standards governing performance evaluation and discipline." (internal quotation marks omitted)).

Accordingly, England must respond to Interrogatory 10 by identifying the names of all members of the Cold Chain division from 2019 through 2021.[66]  And England must produce documents responsive to RFP 19 as to those individuals.  The parties are ordered to meet and confer regarding search terms.

**Interrogatory 11** asks England to identify complaints of disability discrimination and/or retaliation made about Chad Knudsen (the director of the Cold Chain division).[67] During the hearing, England represented that it had already provided all responsive information during a deposition, and it agreed to supplement its response with this information.  Accordingly, Mr. Soqui's motion is granted as to Interrogatory 11.

**Interrogatory 12** asks England to identify all other charges of discrimination filed against England on the basis of disability discrimination and/or retaliation since 2016.[68] England objected to this interrogatory as overbroad and disproportionate because it seeks company-wide information, including about employees not similarly situated to Mr. Soqui and decisionmakers not involved in his termination.[69]  At the hearing, the parties agreed to limit this interrogatory to charges involving employment decisions by decisionmakers involved in Mr. Soqui's termination (based on a list England provided previously).  Accordingly, Mr. Soqui's motion is granted in part and denied in part as to Interrogatory 12, and England must respond to it as limited.

---

[66] At the hearing, Mr. Soqui confirmed he only sought names, not other information.

[67] (Ex. 9 to Pl.'s Mot. to Compel, Def.'s Disc. Resps. 4–5, Doc. No. 34-9.)

[68] (*Id.* at 12.)

[69] (*Id.* at 13.)

**Interrogatory 13** asks England to identify "all employees fired for violating England's credit enforcement policy, including their name, job title, supervisor, and the factual basis of the alleged violation."[70]  England objected to this interrogatory as irrelevant, overbroad, and disproportionate, noting it did not terminate Mr. Soqui for violating the credit enforcement policy.[71]  At the hearing, Mr. Soqui explained that England cited violations of the credit enforcement policy as a reason for terminating another employee, Mr. Young.  But Mr. Soqui believes England actually terminated Mr. Young for requesting to work from home as a disability accommodation.  Mr. Soqui contends evidence related to other acts of disability discrimination is relevant to England's motive in terminating Mr. Soqui.[72]  Accordingly, he seeks information about whether England terminated employees other than Mr. Young for violating the credit enforcement policy, in order to show England's stated reason for terminating Mr. Young was pretextual.

Mr. Soqui's motion is denied as to Interrogatory 13.  Some information about Mr. Young's termination may be relevant where Mr. Young is a potential comparator to Mr. Soqui.  But Interrogatory 13 seeks information regarding the reasons for terminating other employees who may be *comparators to Mr. Young*.  In other words, Mr. Soqui seeks information about comparators to a potential comparator.  This is simply too attenuated to Mr. Soqui's claims to fall within the scope of discovery.  Any relevance is

---

[70] (*Id.* at 6.)

[71] (*Id.* at 7.)

[72] (*See* Mot. 10, Doc. No. 34.)

so minimal, the burden of responding far outweighs its likely benefit.  England's
relevance and proportionality objections to this interrogatory are sustained.

**Interrogatory 14** asks England to identify "all of [Mr.] Young's 'unsatisfactory
Communications' with his supervisors that [led] to or contributed to his termination,
including the date of the communication, the supervisor involved, and why the
communication was unsatisfactory."[73]  This references England's response to a prior
interrogatory, in which England stated it terminated Mr. Young for violating the credit
enforcement policy and "unsatisfactory communication with his supervisors."[74]  England
objected to Interrogatory 14 as irrelevant, overbroad, and disproportionate.[75]  England
explained the term "unsatisfactory communication," from its prior response, "primarily"
referred "to [Mr.] Young's lack of communication[] with his managers," and asserted it
was impossible to "identify the requested details about missing communications."[76]

Mr. Soqui's motion is granted as to Interrogatory 14.  Mr. Soqui contends Mr.
Young is a similarly situated comparator.  And this interrogatory seeks information about
Mr. Young's termination (rather than about Mr. Young's potential comparators).
Moreover, it seeks information about Mr. Young's unsatisfactory communications, which
relates to England's stated reasons for Mr. Soqui's termination.  Under these

---

[73] (Ex. 9 to Pl.'s Mot. to Compel, Def.'s Disc. Resps. 7, Doc. No. 34-9.)

[74] (Ex. B to Pl.'s Second Mot. to Compel, Def.'s Answers and Resps. to Pl.'s First Set of Disc. Reqs. to Def. 8–9, Answer to Interrog. No. 8, Doc. No. 42-2.)

[75] (Ex. 9 to Pl.'s Mot. to Compel, Def.'s Disc. Resps. 8, Doc. No. 34-9.)  England also objected that the term "unsatisfactory communication" was vague, but this objection is overruled where England itself used this term in its prior response.  Presumably, England knows what it meant by this term.

[76] (*Id.*)

circumstances, Interrogatory 14 is relevant and proportional.  Although England claims its prior response referred "primarily" to a lack of communication, the word "primarily" leaves open the possibility that other types of "unsatisfactory communication" exist. England must search for any communications responsive to Interrogatory 14 and supplement its response.  If no other responsive communications exist, England must state this in its supplemental response.

      **Interrogatory 15.**  England substantively responded to this interrogatory, and Mr. Soqui confirmed at the hearing that he does not seek any further response. Accordingly, the motion is moot as to Interrogatory 15.

      **RFPs 20, 22, and 24.**  RFPs 20 and 22 request all communications to or from two individuals regarding Mr. Young's "request for accommodations, requests to work from home, his disability, his work performance, and his termination."[77]  And RFP 24 requests documents and communications related to a different employee's requests for accommodation and/or FMLA leave.[78]  England objected to these requests as duplicative of a prior RFP seeking "all documents reflecting reasonable accommodations for disabilities requested by and/or provided to any [England] employee" since 2016.[79]  At the hearing, England asserted it had produced all responsive documents in response to the prior RFP.

---

[77] (*Id.* at 10, 12.)

[78] (*Id.* at 13.)

[79] (*See id.* at 11–14; Ex. B to Pl.'s Second Mot. to Compel, Def.'s Answers and Resps. to Pl.'s First Set of Disc. Reqs. to Def. 12, RFP No. 9, Doc. No. 42-2.)

Mr. Soqui's motion is granted as to RFPs 20, 22, and 24.  These requests are broader than the prior RFP because they seek additional categories of documents, including all communications about the employees' accommodations requests, as well as Mr. Young's work performance and termination.  For this reason, they are not duplicative.  And England could not confirm at the hearing whether it had searched for these additional documents.  Accordingly, England must conduct a new search and supplement its response to RFPs 20, 22, and 24, subject to the following clarification to avoid overbreadth.  As the parties agreed at the hearing, the term "work performance" in RFPs 20 and 22 shall mean awards, work performance evaluations, and disciplinary actions.

**RFP 21** seeks Mr. Young's "entire personnel file" including "all performance evaluations, commendations, awards, disciplinary actions, records of verbal or written warnings, performance improvement plans, and termination documents."[80]  During the hearing, the parties agreed to limit this request to the specific categories of documents listed—acknowledging other contents of Mr. Young's personnel file (such as tax and benefits forms) are irrelevant.  Accordingly, the motion is granted in part and denied in part as to RFP 21.  England need not produce Mr. Young's entire personnel file but must produce the specific categories of documents listed in RFP 21.

**RFP 23** seeks "documents demonstrating Defendant's financial condition from 2022 to present, such as tax returns, profit & loss statements, ledgers, balance sheets, income statements, financial reports, etc."[81]  During the hearing, England agreed that

---

[80] (Ex. 9 to Pl.'s Mot. to Compel, Def.'s Disc. Resps. 11, Doc. No. 34-9.)

[81] (*Id.* at 13.)

after a ruling on anticipated summary judgment motions, it will produce audited financial statements for the two years preceding the trial date. Mr. Soqui agreed to this, so long as he can file a motion seeking additional financial documents after England's production, if he believes the production is inadequate to demonstrate England's financial condition. Based on the parties' agreement, the motion is granted in part and denied in part (without prejudice) as to RFP 23. England shall produce the agreed-upon documents after a summary judgment ruling, and Mr. Soqui may file a new motion if he believes additional documents are needed.

## CONCLUSION

Mr. Soqui's motion[82] to compel and for sanctions is granted in part and denied in part, and England's motion[83] for sanctions is denied. The court ORDERS as follows:

1.     Both parties' requests for sanctions are denied.

2.     England must supplement its responses to Interrogatories 10, 11, 12, and 14 and RFPs 19 through 24, and produce responsive documents, subject to the limitations explained above.

DATED this 31st day of October, 2025.

BY THE COURT:

_Daphne A. Oberg_

Daphne A. Oberg
United States Magistrate Judge

---

[82] (Doc. No. 34.)

[83] (Doc. No. 39.)