UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH
CENTRAL DIVISION

| | |
|---|---|
| ZACHARY SOQUI,<br><br>  Plaintiff,<br><br>v.<br><br>ENGLAND LOGISTICS, INC.,<br><br>  Defendant. | **MEMORANDUM DECISION AND ORDER GRANTING PLAINTIFF'S SHORT FORM DISCOVERY MOTION (DOC. NO. 42)**<br><br>Case No. 2:24-cv-00261<br><br>District Judge Howard C. Nielson, Jr.<br><br>Magistrate Judge Daphne A. Oberg |

Zachary Soqui brought this action against his former employer under the Americans with Disabilities Act,[1] claiming England Logistics, Inc. discriminated against him by terminating him after he requested the reasonable accommodation of working from home.[2] In response to discovery requests seeking certain employee communications, England produced individual Teams messages containing search terms, arranged in chronological order—but not the surrounding messages. Mr. Soqui asserts this production omitted responsive documents, and he moves to compel England to produce the surrounding messages.[3] England opposes the motion, arguing this would be unduly burdensome and disproportionate to the needs of the case.[4] The

---

[1] 42 U.S.C. § 12101 et seq.

[2] (Compl. ¶¶ 46–55, Doc. No. 1.)

[3] (Pl.'s Short Form Disc. Mot. (Mot.), Doc. No. 42.)

[4] (Def.'s Opp'n to Short Form Disc. Mot. Re: Teams Messages (Opp'n), Doc. No. 45.)

court held a hearing on the motion on October 28, 2025.[5] For the reasons stated on the record and below, Mr. Soqui's motion is granted.

## LEGAL STANDARDS

Rule 26 of the Federal Rules of Civil Procedure permits "discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case."[6] Proportionality considerations include "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."[7]

Under Rule 34 of the Federal Rules of Civil Procedure, the following procedures apply to producing documents or electronically stored information (ESI):

> (i) A party must produce documents as they are kept in the usual course of business or must organize and label them to correspond to the categories in the request;
>
> (ii) If a request does not specify a form for producing electronically stored information, a party must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms; and
>
> (iii) A party need not produce the same electronically stored information in more than one form.[8]

---

[5] (*See* Min. Entry, Doc. No. 53.)

[6] Fed. R. Civ. P. 26(b)(1).

[7] *Id.*

[8] Fed. R. Civ. P. 34(b)(2)(E).

## BACKGROUND

The Teams messages at issue were produced in response to the following Requests for Production (RFPs):

- **RFP 1:** "Produce all documents concerning Mr. Soqui's December 2020 request to work from home, including but not limited to communications between Mr. Soqui and any of Defendant's employees, internal communications regarding the request, and communications with any third parties."[9]

- **RFP 6:** "Produce all communications between Chad Knudsen and any other employee of Defendant regarding Mr. Soqui."[10]

- **RFP 11:** "Produce all documents or communications concerning the specific 'communications that were not orderly, positive, or productive' that were the basis for Mr. Soqui's termination, including any reports or complaints from Mr. Soqui's coworkers."[11]

England objected to RFPs 1 and 11 based on attorney-client privilege and work-product protection but agreed to produce nonprivileged responsive documents.[12] England asserted the same objections to RFP 6, and it also objected that this request

---

[9] (Ex. B to Mot., Def.'s Answers and Resps. to Pl.'s First Set of Disc. Reqs. to Def. (Def.'s Resps.) 9, Doc. No. 42-2.)

[10] (*Id.* at 11.)

[11] (*Id.* at 13.)

[12] (*See id.* at 9–10, 13.)

was overbroad because it included "communications exchanged in the course of daily work" which were irrelevant.[13] But England agreed to produce "nonprivileged communications between Mr. Knudsen and any England employee regarding Mr. Soqui's requests to work from home and the reasons for Mr. Soqui's termination."[14] England did not object to any of these requests based on proportionality.

England produced more than one hundred Teams messages in response to these RFPs.[15] According to Mr. Soqui, England appears to have used key word searches to identify responsive messages, and then compiled all those messages into chronological order, without separating the documents by conversation threads.[16] Mr. Soqui also asserts England *only* produced messages containing search terms, withholding the surrounding messages containing the rest of the conversation.[17] Mr. Soqui asked England to supplement its response, requesting the conversation surrounding 105 specifically identified messages.[18] Mr. Soqui asserts England initially

---

[13] (*Id.* at 11.)

[14] (*Id.* at 11–12.)

[15] (*See* Opp'n 4, Doc. No. 45.) England indicates it has produced more than 500 Teams messages in this case, (*id.* at 4 n.2), but it is unclear how many were produced in response to these specific requests. According to England, Mr. Soqui's counsel identified 105 messages relating to this discovery dispute during conferrals. (*Id.* at 4.)

[16] (Mot. 2, Doc. No. 42.)

[17] (*Id.*)

[18] (*See id.*; Opp'n 4, Doc. No. 45.)

agreed to this, but then it later supplemented only nine of the underlying messages, claiming additional supplementation would be unduly burdensome.[19]

England explains it produced the Teams messages in .MSG format, which it contends is a commonly accepted file format for ESI production.[20] England asserts the only way to provide surrounding messages is to produce them in HTML format.[21] According to England, a former employee performed the original search and production, and its current IT director (England's sole IT employee) "does not have access to the search protocols that [his] predecessor used."[22] After Mr. Soqui requested supplementation, the current IT director "attempted to use England's search software to locate certain Teams messages produced in this matter and then export the entire 'conversation' between particular individuals on the given dates in HTML format."[23] After working for approximately five hours, the IT director could only identify and provide nine conversations.[24] And he anticipates it would take about the same amount of time (roughly thirty minutes per conversation) to complete the remainder of the searches.[25]

---

[19] (Mot. 2, Doc. No. 42.)

[20] (*See* Opp'n 2, Doc. No. 45.)

[21] (*Id.*) England explains the HTML format "would include the entire 'thread,' regardless of subject matter, while .MSG is limited to the message responsive to the relevant search terms." (*Id.* at 2 n.1.)

[22] (Ex. A to Opp'n, Decl. of Ian Seiuli ¶ 6, Doc. No. 45.)

[23] (*Id.* ¶ 10.)

[24] (*Id.* ¶ 12.)

[25] (*Id.* ¶ 13.)

Based on this initial effort, England estimates the requested production would take at least fifty or sixty hours.[26]

## ANALYSIS

Mr. Soqui argues England's production of individual Teams messages without the surrounding context was incomplete, because the entire conversations are responsive to his requests.[27] He also asserts that by producing individual messages without context, England did not comply with Rule 34's requirement to provide ESI "in a reasonably usable form."[28] And he contends England waived any proportionality objection by failing to raise it in the initial response to the requests.[29]

In response, England asserts the phrase "in a reasonably usable form" in Rule 34 refers only to the accessibility of the files.[30] England contends it complied with this requirement by producing messages in the commonly used .MSG format—and it was entitled to choose this format where Mr. Soqui did not specify a format for production.[31] England also argues its proportionality objection is not waived because the burden stems from Mr. Soqui's "newly asserted format preference," which was not part of the

---

[26] (*See* Opp'n 5, Doc. No. 45.)

[27] (Mot. 2–3, Doc. No. 42.)

[28] (*Id.*)

[29] (*Id.* at 3.)

[30] (Opp'n 3, Doc. No. 45.)

[31] (*Id.* at 2–3.)

original requests.[32] Finally, England contends the substantial burden required to identify and produce the surrounding Teams messages far outweighs the benefit the context may provide.[33]

Mr. Soqui's motion to compel is granted. As an initial matter, the file format of England's production is not the issue. Contrary to England's assertions, Mr. Soqui has not moved to compel production of messages in any specific file format. Instead, he asserts England's *production was incomplete* because it left out responsive messages. Mr. Soqui is correct.

England's production of individual Teams messages containing a search term, without any surrounding messages, was not fully responsive to the RFPs at issue. The RFPs request "all documents concerning" Mr. Soqui's accommodation requests (RFP1); "all communications between Chad Knudsen and any other employee of Defendant regarding Mr. Soqui" (RFP 6); and "all documents or communications concerning" Mr. Soqui's communications for which he was terminated.[34] Responsive documents include messages containing the entire conversation regarding these topics—not just isolated, individual messages containing a search term (but otherwise entirely out of context). Because England failed to produce all responsive communications, its production was incomplete.

---

[32] (*Id.* at 3–4.)

[33] (*Id.* at 5.)

[34] (Ex. B to Mot., Def.'s Resps. 9, 11, 13, Doc. No. 42-2.)

Moreover, regardless of the accessibility of the files, England's incomplete production of isolated messages without the surrounding conversation rendered those messages entirely unusable. As a review of the nine examples England provided shows, in most instances, it would be impossible to determine what the messages are about or their potential relevance to this case without the surrounding conversation.[35] For this additional reason, England's original production was inadequate.

It is not necessary to decide whether England waived its proportionality objection. Even assuming England did not waive it, requiring England to produce the surrounding communications is not unduly burdensome or disproportionate to the needs of the case. England asserts producing the surrounding messages would require it to undertake a new search to identify the previously produced messages in its systems and then compile the surrounding conversations in a new format. But this burden is largely a problem of England's own making. England chose to produce only individual, isolated messages in the first place—an incomplete production that also rendered the individual messages unusable.[36] Further, the burden at this stage is at least partly attributable to

---

[35] (*See* Ex. B to Opp'n, Doc. No. 45-2.)

[36] To the extent that producing all responsive documents may require England to produce the messages in a different file format, this is a byproduct of England's incomplete original production. And England could have avoided this by consulting with Mr. Soqui regarding the format of production before completing its initial production. The advisory committee's note to Rule 34 is instructive:

> Stating the intended form before the production occurs may permit the parties to identify and seek to resolve disputes before the expense and work of the production occurs. A party that responds to a discovery request by simply producing electronically stored information in a form of its choice,

the change in IT personnel and the need to recreate the original search. Presumably, this would have been mitigated had England's original production been adequate. And the fact that a change in IT personnel has added to the difficulty of a renewed search does not excuse the need for a fulsome response.

Nevertheless, where England has provided evidence of significant burden, the court must assess whether the burden is justified by considering the relevance of the requested discovery. RFPs 1 and 11 are narrowly targeted toward central issues in this case: Mr. Soqui's accommodation requests, and Mr. Soqui's communications that were the basis for his termination. Messages regarding these narrow issues are unlikely to be voluminous, and they are highly relevant. For RFPs 1 and 11, the likely benefit of this discovery outweighs the burden required to produce the surrounding messages.

However, RFP 6 is overbroad. As England noted in its objection, the request for "all communications between [Mr.] Knudsen and any other employee" regarding Mr. Soqui likely encompasses a large number of irrelevant communications exchanged in the course of daily work.[37] Mr. Soqui appears to have acknowledged this: at the hearing, he confirmed he had agreed during conferrals to narrow the scope of this request. The burden of responding to RFP 6 is justified only if this request is narrowed

---

> without identifying that form in advance of the production in the response required by Rule 34(b), runs a risk that the requesting party can show that the produced form is not reasonably usable and that it is entitled to production of some or all of the information in an additional form.

Fed. R. Civ. P. 34(b) advisory committee's note to 2006 amendment.

[37] (Ex. B to Mot., Def.'s Resps. 11, Doc. No. 42-2.)

to target Mr. Knudsen's communications regarding relevant issues.  As discussed at the hearing, the parties are directed to meet and confer regarding reasonable limitations to RFP 6—starting with any prior agreement on this issue.  England must then produce the surrounding messages for any previously produced messages responsive to RFP 6 as narrowed.  The burden of producing surrounding messages responsive to a narrowed version of RFP 6 is outweighed by the likely benefit of such discovery.

In sum, England's response to RFPs 1, 6, and 11 was incomplete, where it produced only isolated Teams messages containing search terms without any of the surrounding messages.  The burden of producing the surrounding messages is proportional to the needs of the case, provided the parties meet and confer to narrow the scope of RFP 6.  To avoid ambiguity regarding how many surrounding messages England must produce, the court adopts the protocol from *Lubrizol Corp. v. IBM*[38] (cited by Mr. Soqui), as described below.

Finally, Mr. Soqui's request for attorney's fees under Rule 37 is denied.  Although his motion is granted, England's position was substantially justified where it presented evidence that producing the surrounding messages would require significant time and

---

[38] No. 1:21-CV-00870, 2023 U.S. Dist. LEXIS 84927, at *13 (N.D. Ohio May 15, 2023) (unpublished) (ordering production of "(1) the entirety of any Slack conversation containing 20 or fewer total messages that has at least one responsive message; and (2) the 10 messages preceding or following any responsive Slack message in a Slack channel containing more than 20 total messages").

effort. Additionally, England's overbreadth objection to RFP 6 is sustained. Accordingly, an award of attorney's fees to Mr. Soqui is unwarranted.[39]

## CONCLUSION

Mr. Soqui's motion[40] is granted, and the court orders as follows:

1. The parties must meet and confer regarding reasonable limitations to RFP 6, consistent with this order.

2. England must supplement its production in response to RFP 1, RFP 6 (as limited), and RFP 11 as follows:

   a. England must produce the entirety of any Teams conversation containing twenty or fewer total messages that has at least one responsive message; and

   b. England must produce the ten messages preceding or following any responsive Teams message in a Teams conversation containing more than twenty total messages.

DATED this 4th day of November, 2025.

BY THE COURT:

_Daphne A. Oberg_
Daphne A. Oberg
United States Magistrate Judge

---

[39] See Fed. R. Civ. P. 37(a)(5)(A)(ii) (providing a court must not award attorney's fees to a movant who prevails on a motion to compel if "the opposing party's nondisclosure, response, or objection was substantially justified").

[40] (Doc. No. 42.)